IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02515-MEH

S.B.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 1381–83c. Jurisdiction is proper under 42 U.S.C. § 405(g).

    The parties have consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636 and D.C.Colo.LCivR 72.2. ECF 8. The parties have not requested oral argument, and the Court finds it would not materially assist in the appeal's determination. The Court finds the Administrative Law Judge ("ALJ") did not err when he formulated his residual functional capacity ("RFC"). In addition, the ALJ appropriately considered and evaluated the opinions of the medical providers, and the final decision is supported by substantial evidence in the record. Accordingly, the Court affirms the ALJ's decision that Plaintiff was not disabled from February 15, 2020 through the date of the decision.

# BACKGROUND

Plaintiff was fifty-six years old on the alleged onset date. Social Security Administrative Record filed November 16, 2022, ECF 7 ("AR") at 64. She alleges she became disabled on January 1, 2019. At the hearing held on March 2, 2022, Plaintiff amended the alleged onset date to February 15, 2020, the date all work activity stopped. AR 19, 48. She had past relevant work as a customer service representative, home health aide, fast food worker/fast food manager, and cashier/checker. AR 57-58.

On January 28, 2021, the SSA initially denied her application for DIB and upon reconsideration on October 2, 2021. AR 78, 98. After a hearing on March 2, 2022, AR 35, the ALJ issued an unfavorable decision dated March 22, 2022. AR 19-29. Plaintiff requested a review by the Appeals Council, which denied Plaintiff's request for review on August 1, 2022, making the ALJ's decision the final agency decision. AR 1-6. *See* 20 C.F.R. §404.981. Plaintiff timely appealed to this Court. ECF No. 1.

In his decision, the ALJ determined Plaintiff meets the insured status requirements through June 30, 2025 and has not engaged in substantial gainful activity since the alleged onset date. AR 21. The ALJ found Plaintiff has the following severe impairments: inflammatory bowel disease/Crohn's disease/ulcerative colitis); colon polyps; gastroesophageal reflux disease ("GERD"); and mild degenerative disc disease ("DDD") of the lumbar spine with radiculopathy. AR 21. The ALJ found no combination of impairments met or medically equaled a listed impairment. AR 22-23, citing, 20 CFR Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.[1] He found Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), except:

---

[1] The ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s), and 5.0 (digestive system). AR 22-23.

> The claimant can occasionally stoop, crouch, crawl, or climb ladders, ropes, or scaffolds, and she can frequently balance, kneel, or climb ramps and stairs. She requires ready access to a restroom, specifically defined as the claimant must work indoors, cannot work at heights, cannot perform commercial driving, and cannot perform any fast-paced production work.

AR 23. The ALJ determined Plaintiff could perform her past work as a customer service representative and cashier/checker. AR 28. He therefore did not proceed to Step Five and found Plaintiff not disabled. AR 28.

At the hearing held before the ALJ, Plaintiff and a vocational expert ("VE") testified. Plaintiff testified to worsening Crohn's symptoms since the amended alleged onset date including worsening pain, bloating, and diarrhea. Plaintiff reported that when even on medications, she experienced ongoing bloating, as well as urgent diarrhea six times per day and every time she goes to the bathroom. AR 49, 55. She also noted abdominal pain occurring five times per day requiring her to sit or lay down. AR 51. This lasted from one hour to four hours a day. On an average day, the Plaintiff reported lying down about four hours. AR 51. Plaintiff also reported back pain on a daily basis. This was worsened by lifting, and she noted she was unable to lift more than ten pounds. AR 52. Additionally, sitting worsened her back and abdominal pains. AR 52-53. With respect to her left hand, Plaintiff testified that only her index finger and thumb can move, she cannot lift or type but that she can grip. AR 53. In her prior jobs she did not report that she had an issue with her left hand and worked around it by relying on her right hand. AR 54.

VE Katherine Jet was asked to assume a hypothetical person of Plaintiff's age, education and work history, limited to occasionally lifting and carrying twenty pounds; frequently lifting and carrying ten pounds; with the ability to stand and/or walk six hours of an eight our work day; can sit for six hours of an eight hour work day; can occasionally climb ladders, ropes or scaffolds, stoop, crouch or crawl; and can frequently balance, kneel or climb ramps and stairs. The VE testified that such an individual could perform Plaintiff's past jobs of cashier checker, customer

service representative, and fast-food worker and manager. AR 59. When the additional limitation was added to this first hypothetical, including the restriction that they require ready access to the restroom, must work indoors, cannot work at heights, cannot perform commercial driving, and cannot perform fast paced production work, this hypothetical individual could perform the customer service representative position as well as the cashier checker position. AR 59-60. A third and final hypothetical posed resulted in preclusion of all employment: when the individual of Plaintiff's age, education and work history could rarely lift or carry up to five pounds, can frequently sit, stand, walk stoop or climb and up to two-thirds of an eight-hour day, can frequently reach with the bilateral upper extremities, can frequently handle or finger with the right upper extremity but can never handle or finger with the left upper extremity, would be off task sixty percent of the work day, would need to lie down for two or three hours of the work day, and would be expected to miss more than five days of work per month. AR 60.

## LEGAL STANDARDS

### SSA's Five-Step Process for Determining Disability

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity. If she is, she is not disabled. *See* 20 C.F.R. § 404.1520. Step Two analyzes whether the claimant has a medically severe impairment or combination of impairments, as governed by 20

C.F.R. § 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. *See id.* Step Three analyzes whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment is listed or is equivalent to a listed impairment, she is presumed to be disabled. If the impairment does not satisfy Step Three, the ALJ must proceed to Step Four, which requires the claimant to show that her impairment(s) and RFC prevent her from performing work that she has performed in the past. If the claimant is capable of performing her previous work, either as she performed it or as it is generally performed in the national economy, she is not disabled. *See* 20 C.F.R. § 404.1520(e), (f); *see also Dumas v. Colvin*, 585 F. App'x 958, 960 (10th Cir. 2014) ("Claimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy." (quoting *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993))). However, if the claimant establishes a prima facie case of disability based on the previous four steps, the analysis proceeds to Step Five, where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

## Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)). "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the

5

correct legal standards." *Bailey v. Berryhill,,* 250 F. Supp. 3d 782, 784 (D. Colo. 2017) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). The Court, however, may not reweigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## **ALJ'S RULING**

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2019, the originally proposed alleged onset date. AR 21. At Step Two, the ALJ determined that Plaintiff had severe impairments[2] of inflammatory bowel disease (called both Crohn's disease and ulcerative colitis); colon polyps; gastroesophageal reflux disease

---

[2] The ALJ found that Plaintiff has also been diagnosed with hypertriglyceridemia, pulmonary nodules, and allergic reaction, but that these impairments are non-severe as there is no evidence she has ongoing functional limitations from these impairments due to the limited nature of the complaints, the good response to treatment, or the lack of any evidence of any functional limitations for any twelve-month period of time. 20 CFR § 404.1520(c). The ALJ considered potential effects these impairments might cause or contribute to in the residual functional capacity. AR 22 (citing 20 CFR § 404.1545(a)(2)).

6

("GERD"); and mild degenerative disc disease of the lumbar spine with radiculopathy which impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. AR 21 (citing 20 C.F.R. § 404.1520(c)). The ALJ found that Plaintiff's claimed left-hand impairment was not severe, noting the absence of any evidence of the impairment.

Moving to Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. AR 22.

At Step Four, the ALJ assessed Plaintiff's RFC after reviewing the record evidence and testimony and then formulated Plaintiff's RFC. He concluded that Plaintiff could perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b)[3] with the additional limitations, described *supra*. AR 23. The ALJ found the with the limitations contained in the RFC, Plaintiff is capable of performing past relevant work. AR 25. Therefore, the ALJ did not proceed to Step Five.

In arriving at Plaintiff's RFC, the ALJ relied on Plaintiff's symptoms and the extent those symptoms could be reasonably accepted as consistent with the objective medical evidence and the opinions of her treating physicians and other examiners. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 24. The ALJ noted that in the Adult Function Report dated January 4, 2021, Plaintiff reported she was independent in personal care activities, and many activities of daily living including

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). *See also* SSR 83-10 (the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday).

preparing simple meals, doing light cleaning, driving a car, and shopping. AR 256-58. The ALJ further noted that at the hearing, Plaintiff also testified that she was able to work when she was provided ready access to a bathroom.

    a.  **Gastrointestinal Issues**

Medical records noted a diagnosis of ulcerative colitis on March 30, 2015. AR 638. On April 1, 2020, the gastroenterologist reported that a recent colonoscopy confirmed colon polyps with a localized area of focal active colitis. AR 323. The abdominal pain was resolved with the combined use of Elavil and Bentyl, and it was determined that her pain was related to irritable bowel syndrome. AR 323. AR 323. The ALJ further found a diagnosis of inflammatory bowel disease and Crohn's disease some twenty years prior to May 6, 2021. AR 612. A diagnostic report dated April 6, 2021, identified GERD. AR 609. An endoscopic pathology lab report dated April 8, 2021 found no evidence of idiopathic inflammatory bowel disease. AR 608. On May 30, 2021, her gastroenterologist reported that a capsule study did not show changes to suggest active Crohn's disease. AR 619.

The ALJ addressed Plaintiff's symptoms and compared them to records from her gastroenterologist in March 2020, less than a month after the amended onset date. The records showed reports of abdominal pain and bloating. AR 316. Physical examination findings were generally mild including no organomegaly or masses, but noted generalized abdominal tenderness most marked in the lower abdomen. AR 316. The ALJ found that the record showed good response to treatment. For example, by April 2020, less than two months after the amended alleged onset date, Plaintiff's gastroenterology records noted that with the use of Elavil and Bentyl three times per day, Plaintiff had "significantly improved" bowel movements with formed stools, and her abdominal pain had "resolved." AR 323.

The ALJ also considered the subjective reports noted in the file of daily Crohn's flare ups, worsening if Plaintiff did not eat at specific times, resulting in increased pain, and urgent trips to the restroom without warning. AR 342. Additionally, in March 2021, Plaintiff called her gastroenterologist to report extreme abdominal pain. AR 601. However, her labs were normal, and Plaintiff was encouraged to increase her omeprazole to forty milligrams, twice a day. AR 601. The ALJ further noted that Plaintiff underwent a detailed workup in April 2021, including a colonoscopy that showed no diagnostic abnormalities, no evidence of idiopathic inflammatory bowel disease, lymphocytic colitis or collagenous colitis. AR 540, 546, 604, 608. An endoscopy on April 5, 2021 was negative for Barrett's esophagus. AR 540. Additionally, an abdominal CT performed on April 14, 2021 noted only possible mild colitis. AR 528. At her follow-up appointment with her gastroenterologist in May 2021, Plaintiff reported loose stools only occurring twice daily and after meals. AR 612. Records from Plaintiff's primary care provider the same month noted that the Crohn's disease also seemed to be under good control. AR 545. Further, one month later on June 30, 2021, Plaintiff's gastroenterologist noted that with the addition of Colestid every other day, her diarrhea had resolved, and a capsule endoscopy study did not indicate active Crohn's disease. AR 619. She continued to report painful abdominal bloating after eating, however, AR 619. This was improved by August 2021, less than 2 months later, with adjustment of the Plaintiff's dosage of Elavil and Bentyl. AR 623. The ALJ found that notably, Plaintiff's gastroenterology records described Plaintiff's abdominal discomfort was "well controlled" in that Plaintiff was passing no more than three formed stools daily. AR 623. That same record also noted improvement with regard to Plaintiff's urgent and loose stools, bloating, and abdominal cramping. AR 625. Her primary care physician stated on November 16, 2021 that she was "having more control over bowels now." AR 667.

After examining these records the ALJ found:

> In sum, the record does not support the claimant's testimony of urgent diarrhea occurring 6 times per day. Instead, the record noted "loose stools approximately twice daily" (9F/12), and this was prior to improvement with medications. As noted above, with medications the claimant's other symptoms significantly improved including her urgency, bloating, and abdominal pain (e.g. 9F/19, 20). However, as the record still indicated some subjective reports that the claimant stayed close to home and a bathroom (10F/42), even after the improvement noted in the claimant's gastroenterology records, I find it prudent to include the limitation that the claimant still requires ready access to a bathroom as discussed in the assessed residual functional capacity.

AR 25.

The ALJ further addressed Plaintiff's subjective complaints of back pain, allegedly arising from her gastrointestinal issues: specifically, her testimony that she needed to lie down about four hours each day. The ALJ found that she had not reported these or similar symptoms to any of her treating providers. AR 25. The ALJ concluded that the allegation was not consistent with the good response to treatment and good control of symptoms noted in her records.

### b. Back injury

Next, the ALJ addressed the effect of Plaintiff's degenerative disc disease of the lumbar spine with radiculopathy. The record reflects she injured her back in July 2020 while pulling weeds, and that she fell after pulling a vine. AR 356.   Other records show Plaintiff reporting she "threw her back out." AR 348.

On July 13, 2020, Plaintiff treated with Michelle Duran, M.D., due to her back injury.  AR 356. At the appointment, Plaintiff's pain was at a severity of ten out of ten, and the pain was worse with sitting. AR 356. Dr. Duran noted difficulty sitting on exam as well as lumbar swelling and spasm and positive straight leg raises. AR 357. She prescribed prednisone and oxycodone. AR 356.

On July 31, 2020, Plaintiff treated with Becky Kueter, PA, for acute low back pain. AR 350. Plaintiff noted that her toes had been going numb. AR 350. On exam, Plaintiff was unable to

10

forward flex or backward extend, and PA Kueter observed that Plaintiff appeared in distress while sitting, and she had pain to palpation of the lumbar spine and paraspinals. AR 351. PA Kueter prescribed prednisone, tizanidine, and oxycodone. AR 352. Initial x-ray imaging dated July 31, 2020 identified disc space narrowing at L5-S1 and mild degenerative disc disease. AR 407.

On August 7, 2020, Plaintiff saw Kate Grover, PA, concerning right-sided low back pain that radiated down the right leg with numbness and tingling down the leg and into the groin area. AR 345. Plaintiff had attempted physical therapy. AR 345. On exam PA Grover noted tenderness over the lower lumbar spine into the right lumbar paraspinal region, tenderness in the right groin with decreased motion of the hip and back due to pain, strength reduced to 4/5 due to pain, and positive straight leg raising (though unable to assess supine due to pain). AR 346. PA Grover referred Plaintiff to the emergency room. AR 346. A CT scan of the lumbar spine identified disc herniations at L4-L5. AR 396. On October 2020, a lumbar MRI revealed a left disc bulge at L5-S1 causing moderate neural foraminal stenosis, left greater than right, but no significant central canal stenosis. AR 380-81.

Shortly after the MRI, Plaintiff's primary care provider, Dr. Duran, referred her to pain management. AR 502. The ALJ noted there are no "other pain management records and subsequent treatment records including with the Plaintiff's primary care provider showed no further ongoing back pain complaints, or any significant ongoing musculoskeletal physical examination findings." AR 26 (citing AR 542-53). The ALJ then determined:

> In sum, the record reflects significant short-term physical examination findings related to the claimant's back injury between July and October 2020. This is consistent with an acute back injury and the claimant's reports of throwing her back out while pulling weeds. However, the absence of any ongoing musculoskeletal findings outside of that period, makes the physical examination findings of reduced strength and positive straight leg raise results less persuasive in assessing the claimant's ongoing functional limitations. Simply put, the short period of complaints and treatment indicates the claimant was injured, but then got better. Nevertheless, in consideration of the claimant's imaging findings showing mild

degenerative disc disease of the lumbar spine with radiculopathy, it is reasonable to limit the claimant to a range of light work activities as assessed in the residual functional capacity.

AR 26.

### c. Hand Injury

On August 25, 2020, Plaintiff reported to Dr. Duran for a follow-up appointment. AR 343. Dr. Duran noted that Plaintiff had lacerated three tendons in her left forearm several years prior, causing damage and decreased coordination and mobility of the left hand. AR 342. Plaintiff's back was a little bit better, but she still could not lift anything heavy. AR 342-43. Dr. Duran noted the claimed history but did not perform any examination of Plaintiff's arm or hand. AR 341-44. The record evidence does not include any examination findings with respect to Plaintiff's left hand.

On August 25, 2020, Dr. Duran completed a Medical Source Statement (Overall Physical & Mental). AR 329-31. She described Plaintiff's impairments as "left arm tendons don't work, decr. hand coordination; Crohn's disease causes significant abd pain; needs to take medication at specific times of day; needs to eat at specific times of day. Has flare ups daily, must be close to a restroom." AR 329. She opined that Plaintiff could do all exertional activities but could only lift/carry one to five pounds infrequently. AR 329. Plaintiff could not use the left hand because of tendon damage, but she could use the right hand. AR 329. When Plaintiff had a flare up of Crohn's disease, she would need to get into the fetal position to stop abdominal pain, which could last two to three hours. AR 330. Dr. Duran noted that Plaintiff was unable to eat at work due to flare ups, and so she ate at night, decreasing her sleep. AR 331.

On January 23, 2021, Navjeet Singh, M.D. reviewed the record at the request of the SSA and opined limitation consistent with light work with further limitation to occasional stooping, crouching, crawling, and climbing of ladders/ropes/scaffolds and frequent balancing, kneeling, and climbing of ramps/stairs; Dr. Singh opined that Plaintiff did not require any manipulative

12

limitations. AR 72-73.  On September 28, 2021, Deborah Wafer, M.D. reviewed the record at the request of the SSA and concurred with Dr. Singh's opinions, with the exception that Plaintiff was limited to occasional balancing. AR 91-92. Dr. Wafer found that the medical record did not show any left-hand grip problems and physical examinations in the record were normal.  AR 93.

## ISSUES ON APPEAL

On appeal, Plaintiff alleges 1) the ALJ failed to sufficiently inquire into evidence of Plaintiff's manipulative impairment despite having no examining opinion calling the impairment into question; and 2) the ALJ failed to resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles.  Plaintiff requests remand for further consideration of Plaintiff's tendon issue, manipulative impairments, the proper classification of her past work, and the manipulative requirements of such work.

## ANALYSIS

In his findings, the ALJ noted that Dr. Duran indicated on the disability medical source statement that Plaintiff was unable to use her left hand because of tendon damage.  AR 329. The ALJ found that Plaintiff's single claim of this limitation was unsupported and not reflective of her actual abilities.  AR 22, 26, 27.  The ALJ consequently found this unpersuasive, as it was unsupported and inconsistent with the rest of the evidence.  AR 27. The ALJ noted in Plaintiff's Disability Report in October 2020, and again on her Function Report in January 2021, no left-hand issues were claimed as a disabling condition.  AR  22, 229, 255-61. Additionally, both state agency medical consultants found that Dr. Duran's opinion was inconsistent with the medical record and found Plaintiff did not require any manipulative limitations.  AR 71-73, 90-93. The ALJ found these prior administrative medical findings persuasive, a finding Plaintiff does not challenge on appeal. Plaintiff was able to work during the time period after the left-hand injury occurred,

13

including at a marijuana dispensary and Little Caesar's Pizza, which required her to handle and grab machines and objects as well as lift trays.  AR 245-47.

Under these circumstances, the ALJ need not have a consultative examination with respect to Plaintiff's purported left-hand functional loss.  First, I note that there is nothing in the record to indicate that Plaintiff's counsel requested a consultative examination.  Second, when faced with a similar argument on appeal, the Tenth Circuit explained that ALJs have broad latitude in this regard:

> But the ALJ relied on other, current evidence, including evidence from Dr. Cherry, an acceptable medical source, for his conclusion that Mr. Lundgren's mental limitations were not disabling. Thus, the record indicates that a consultative examination was not "necessary or helpful to resolve the issue of impairment." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997). Therefore, we conclude that the ALJ acted within the "broad latitude [afforded the Commissioner] in ordering consultative examinations." *Id.* at 1166.

*Lundgren v. Colvin*, 512 F. App'x 875, 878 (10th Cir. 2013). Ultimately, although an ALJ has a duty to develop the record in a Social Security case, it remains the claimant's burden to establish that she was disabled during the relevant period. *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987); 20 C.F.R. § 404.1512(a). This requires the claimant to furnish medical and other evidence of the existence of the disability. 42 U.S.C.§ 423(d)(5)(A); *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). In the instant case, the ALJ reasonably found that the documents Plaintiff submitted did not constitute such evidence. Accordingly, Plaintiff failed to meet her burden of establishing that the ALJ erred.  See *Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997).

Next, I address Plaintiff's argument with respect to vocational expert's testimony and the Dictionary of Occupational Titles. Plaintiff avers that her job description of past relevant work resembles customer service representative (DOT 205.362-026, 1991 WL 671712) more closely than it resembles customer-complaint clerk (DOT 241.367-014, 1991 WL 672252). ECF 11 at 7-8.  Plaintiff alleges that the customer-complaint clerk requires only occasional handling and

fingering, while customer service representative requires frequent handling and fingering. Given that I find the ALJ did not err in finding Dr. Duran's opinion was inconsistent with the medical record and the findings of both state agency medical consultants, *i.e.* that Plaintiff did not require any manipulative limitations, this argument is unavailing. Plaintiff makes no argument that these occupations are inconsistent with the limitations actually found by the ALJ.

In summary, the evidence of record supports the ALJ's findings under the substantial evidence standard of review. For all these reasons, after reviewing the entire record, I conclude that the ALJ's findings are based upon substantial evidence and inferences reasonably drawn therefrom and that the ALJ applied the appropriate formulation to the RFC. Therefore, I deny the request for remand.

## CONCLUSION

The ALJ did not err in determining that Plaintiff was not disabled from February 15, 2020, through the date of his decision. The ALJ's decision that Plaintiff was not disabled is **affirmed**.

Dated at Denver, Colorado this 26th day of June 2023.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge